UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
Wilmington Savings Fund Society, FSB,

                                  Appellant,          1:22-cv-01982-DG

-against-

Loyce Tamisi,

                                  Appellee.
------------------------------------------------------------x

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re:

                                  Case No.: 1-20-40388-jmm

Loyce Tamisi,

                                  Chapter 13

                 Debtor.
------------------------------------------------------------x

**BRIEF OF APPELLANT WILMINGTON SAVINGS FUND SOCIETY, FSB**


Robertson, Anschutz, Schneid, Crane & Partners, PLLC
Attorneys for Wilmington Savings Fund Society, FSB

Kevin R. Toole, Esq.
900 Merchants Concourse
Suite 310
Westbury, New York 11590
(516) 280-77675
ktoole@raslg.com

**TABLE OF CONTENTS**

**TABLE OF AUTHORITIES**……………………………………………………………………ii

**JURISDICTIONAL STATEMENT**……………………………………………………....…1

**STANDARD OF REVIEW**……………………………………………………....……………1

**STATEMENT OF ISSUES ON APPEAL**……………………………………..……………2

**STATEMENT OF FACTS**……………………………………………………………………3

**ARGUMENTS**…………………………………………………………………....…………5

    I.  **CREDITOR SHOULD HAVE BEEN
GRANTED STANDING TO ASSERT THE CLAIM**…………………………………5

    II.  **THE LOST NOTE AFFIDAVIT WAS NOT SO DEFIEICENT
AS TO WARRANT PRECUSION IN CONSIDERIGN CREDITOR'S RIGHTS**.…8

    III. **THE BANKRUPTCY COURT ERRED IN EXPUNGING CLAIM NO. 4**……..…12

**CONCLUSION**……………………………………………………………………....…12

**CERTIFICATE OF COMPLIANCE**……………………………………………………14

**CERTIFICATE OF SERVICE**……………………………………………………………..15

## TABLE OF AUTHORITIES

**CASES**                                                                       **PAGE**

*Babbit v. Vebeliunas*, 332 F.3d 85, 90 (2d Cir. 2003)……………………………….………1

*District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983)…………………...7

*In re Benyamin*, 596 B.R. 796 (Bankr. SDNY 2019)……………………………………….....8

*In re Hyman*, 502 F.3d 61 (2d Cir. 2007)……………………………………….……………1

*In re Palm Coast Matanza Shores Ltd. Partnership*, 101 F.3d 253m (2d Cir. 1996)………....1

*In re Quigley Co., Inc.* 676 F.3d 45 (2d Cir. 2012)……………………………………..........1

*In re Richmond*, 34 B.R. 479 (EDNY 2015)……………………….….…..…………8

*Lance v. Dennis*, 546 U.S. 459, 463 (2006)………………………….…..………………7

*Lynch v. Voccaro (In re Lynch)*, 566 B.R. 290 (E.D.N.Y. 2017)………………….…..……1

*Rooker v.Fidelity Tr. Co*, 263 US 413 (1923)……………………………………………7

*Wells Fargo Bank, N.A. v. Meisels*, 177 AD3d 812 (2nd Dept. 2019)………………………….9

*Wells Fargo Bank, N.A. v. Validmisky*, 195 AD3d 695 (2nd Dept. 2021)……………………..8

**STATUTES**

11 U.S.C. § 101(5)(A)……………………………………………………………...………6

11 U.S.C. §101(10)(A)……………………………………………………………………….6

28 U.S.C. §158……………………………………………………………………………….1

New York UCC 3-8804……………………………………………………………………….8

Federal Rule of Bankruptcy Procedure 3001(c)(1)…………………………………….…7

## JURISDICTIONAL STATEMENT

28 U.S.C. §158(a) provides that "the district courts of the United States shall have jurisdiction to hear appeals (1) from final judgments, orders and decrees…" A final order is any order "that finally disposes of discrete disputes within the larger case." *In re Quigley Co.*, *Inc.* 676 F.3d 45, 51 (2d Cir. 2012). The concept of finality is more flexible in bankruptcy cases and a final order is any order where the nothing in the order indicates any anticipation that the decision will be reconsidered. *In re Palm Coast Matanza Shores Ltd. Partnership*, 101 F.3d 253, 256 (2d Cir. 1996). In this case the Decision of the Bankruptcy Court disposed of the issue presented to the Bankruptcy Court, the requested disgorgement of fees by Appellant, and the Decision is a final order subject to appeal.

## STANDARD OF REVIEW

The District Court when reviewing a decision of the Bankruptcy Court on appeal generally reviews findings of facts and conclusions of law independently. *In re Hyman*, 502 F.3d 61, 52 (2d Cir. 2007); *Babbit v. Vebeliunas*, 332 F.3d 85, 90 (2d Cir. 2003); *Lynch v. Voccaro (In re Lynch)*, 566 B.R. 290, 299 (E.D.N.Y. 2017). The Bankruptcy Court's finding of facts are reviewed for clear error and conclusions of law are reviewed *de novo*. *In re Hyman* 502 F.3d at 65.

## STATEMENT OF ISSUES PRESENTED ON APPEAL

1. Did the Bankruptcy Court commit reversible error in holding that Appellant did not have standing to file proof of claim no. 4-1 and amended proof of Claim No. 4-2.

2. Did the Bankruptcy Court commit reversible error in finding that the Lost Note Affidavit submitted as part of Bankruptcy Case Docket Entry 98 (98-1) - Exhibit A was insufficient.

3. Did the Bankruptcy Court commit reversible error in expunging Claim No. 4-2.

For the reasons discussed below, each of these questions should be answered in the affirmative and the Expungement Order should be vacated.

## STATEMENT OF FACTS

Appellee, Loyce Tamisi (the "Debtor") commenced a case under chapter 13 of the United States Bankruptcy Code (Title 11 United States Code) on January 22, 2020 (the "Filing Date") by filing a voluntary petition for relief in the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court"), case no. 1-20-40388-jmm (the "Case").  The Honorable Jil Mazer-Marino presided in the Case during the pertinent matters that are now before this Court.

Appellant, Wilmington Savings Fund Society, FSB ("Creditor") filed a proof of claim in the Case on April 1, 2020, and thereafter an amended proof of claim on April 7, 2020, designated as Claim No. 4 in the Case claims register ("Claim No. 4")[Appeal Record – Pages 357 to 403]. Claim No. 4 asserted a secured claim in the total amount of $1,047,647.63 upon a mortgage loan note dated August 14, 2006 in the principal amount of $480,000.00 executed by Debtor and delivered to Argent Mortgage Company, LLC ("Argent"), and which was secured by a mortgage instrument dated the same date and executed by Debtor which granted a mortgage lien upon Debtor's real property  at 1350 Pinson Street,  Queens, New York 11691 (the "Property") and which was recorded  with the City Register of the City of New York (the "City Register")on September 26, 2006 (the "Mortgage Loan").  The subject note and mortgage evidencing the Mortgage Loan, along with assignments of mortgage are a part of Claim No. 4.

Prior to the Case, the then holder of the Mortgage Loan, DLJ Mortgage Capital, Inc. ("DLJ") commenced a foreclosure action in the New York State Supreme Court for the County of Queens, Index No. 7326/2007 against Debtor and other parties with possible interest in the Property based on a default by Debtor under the Mortgage Loan (the "Foreclosure Action").  In the Foreclosure Action, an Order of Judgment of Foreclosure and Sale was entered by the Supreme Court on December 12, 2018 (the "Foreclosure Judgment").  The Foreclosure Judgment is at

Appeal Record – Pages 407 to 414. The Foreclosure Judgment was not later vacated, or overturned on appeal.

The Debtor filed an objection to Claim No. 4. Creditor interposed a response in opposition and the Bankruptcy Court entered an order for the scheduling of supplemental briefs and arguments on issues that arose in the claim objection. Debtor's Motion to Object to Notice of Mortgage Payment Change is at Appeal Record – Pages 20 to 23. Debtor's Objection to Claim is at Appeal Record – Pages 24 to 44.

The chain of ownership of the Mortgage Loan begins with the originating lender as identified in the Note, Argent Mortgage Company, LLC ("Argent") [Appeal Record – Pages 33 to 34]. Argent endorsed the Note in blank – *see*, Appeal Record – Page 34. As the Note was endorsed in blank, the subsequent entities claim ownership of the Mortgage Loan would have to have possession of the Note and evidence of a right to possession. Such right to possession of blank endorsed promissory notes is the chain of assignments of the mortgage instrument.

By Assignment of Mortgage dated August 17, 2006, Argent assigned the mortgage to DLJ. That assignment was recorded with the City Register on June 22, 2007 – *see*, Appeal Record - Pages 393 to 395. DLJ assigned the mortgage to Creditor by Assignment of Mortgage dated January 31, 2020. That assignment was recorded with the City Register on February 14, 2020 – *see*, Appeal Record - Pages 396 to 400.

The assignment of the mortgage from DLJ to Creditor occurred 9 days after the Filing Date, and within a time period that would not have necessarily allowed for notice of the Case to have been received by DLJ before the transfer of the Mortgage loan from DLJ to Creditor occurred.

Upon Creditor's receipt and review of the Mortgage Loan file received from DLJ it was determined that the original of the Note was not in the loan documents Creditor received. DLJ then prepared and delivered to Creditor a Lost Note Affidavit providing information on the circumstances of the loss of the original note. A copy of the Lost Note Affidavit was submitted in

a filed supplemental response to the claim objection, Case ECF No. 98-1 – Exhibit A [Appeal Record – Pages – undetermined]. A copy is annexed to this Brief as Exhibit A for ease of Court reference.

After the completion of all filings and briefings concerning the objection to mortgage payment change and objection to Claim No. 4, on March 9, 2022 Judge Mazer-Marino rendered her decision and read that decision into the record of the March 9 hearing ("March 9 Transcript"). The hearing transcript is found at Docket No. 3 of this Court docket for the appeal, Part 1, Appeal Record – Pages 26 to 37.

The Bankruptcy Court found that the Lost Note Affidavit was insufficient in content (March 9 Transcript – pg. 7, ll. 5-19). and raised issue with the timing of the affidavit relative to the transfer of the Mortgage Loan as evidenced by the January 31, 2020 assignment of mortgage (March 9 Transcript – pg. 6, ll. 22-25 and pg. 7, ll. 1-4).

The Bankruptcy Court then determined:

1. that to file a proof of claim a claimant must be a real party in interest which means the claimant is a creditor, or a creditor's agent (March 9 Transcript – pg. 7, ll. 20-22);

2. that the real party in interest with respect to a mortgage prof of claim is the party entitled to enforce the note and its accompanying mortgage (March 9 Transcript – pg. 7, ll. 20-22);

3. that for a mortgage assignee to establish standing [to file a claim], the assignee must [sic] proof of assignment of the note to the assignee or must demonstrate that the note has been endorsed in blank and that the assignee has physical possession of the note (March 9 Transcript – pg. 8, ll. 13-17).;

4. that the Lost Note Affidavit was insufficient in describing the circumstances of the loss of the note and efforts to locate the note by the then holder (DLJ) (March 9 Transcript – pg. 10, ll. 22-25 and pg. 11, ll. 1-).

From these determinations, and the Bankruptcy Court's findings that the Lost Note Affidavit did not evidence that DLJ ever had the note, or that the note was conveyed to Creditor and that the lack of such evidence prevented Creditor form having standing to file Claim No. 4. Thereupon, the Bankruptcy Court determined that Creditor did not have standing, and that Claim No. 4 should be expunged (March 9 Transcript – pg. 11, ll. 23-25 and pg. 12, ll. 1-3). The Bankruptcy specifically found and stated on the record that "[it] is not making any ruling respecting the creditor's mortgage lien." (March 9 Transcript – pg. 12, ll. 11-13). Thereafter, on March 22, 2022 the Bankruptcy Court entered an Order expunging Claim No. 4 (Appeal Record –Page 18).

## ARGUMENTS

### I. CREDITOR SHOULD HAVE BEEN GRANTED STANDING TO ASSERT THE CLAIM

Creditor received the Mortgage Loan file from DLJ practically simultaneously with the debtor commencing the Case. The filing of the Case itself does not give creditors and parties in interest notice of the start of a bankruptcy case. The creditor or party in interest must either receive the formal notice of filing that the bankruptcy court generates and mails (generally USPS first class mail) or the filing debtor contacts the creditor or party in interest and notifies it of the filing.

In the Case, the Bankruptcy Court's notice of the Case filing was not generated and mailed until January 24, 2020, just seven days before the mortgage assignment by DLJ to Creditor. Thus, it is extremely unlikely that DLJ knew of the Case when it transferred the Mortgage Loan file to Creditor, and thus could not have been in a position to prepare and file a proof of claim for the Mortgage Loan in the Case before it relinquished ownership of the Mortgage Loan.

Is it to be expected that after DLJ had conveyed the Mortgage Loan to Creditor and executed the mortgage assignment (all in January 2020, the same month as the Case commenced). That once DLJ and Creditor became aware of the Case, there should be a re-conveyance and

8

reassignment of the mortgage Loan back to DLJ so it could file a proof of claim, and then after the claim is filed, do a further re-conveyance and reassignment back to Creditor and then have a transfer of claim filed in the Case. This is an impractical scenario in even a single loan transfer, but when loan portfolios are sold between owners and investors, and substantial transactional work and documentation, as well as recordable evidence of mortgage assignments are prepared for each portfolio loan, such a "solution" becomes a practical and real impossibility. The Bankruptcy Court relied on *In re Benyamin*, 596 B.R. 796 (Bankr. SDNY 2019) to find that there must be a holding of claim on the case filing date for a creditor to have standing to file a proof of claim. However, that case involved a convoluted investor, servicer, custodial agent scenario that made it difficult for the Bankruptcy Court to conclude that the subject creditor had the right to file the proof of claim at the time the bankruptcy case began. The *Benyamin* case is distinguishable to this matter as the creditor parties are clear and the rights under the Mortgage Loan are evident. The issue here was an incredibly tight timeline of case filing, loan transfer and claim filing.

At the time it became aware of the Case, Creditor was a creditor as defined by Bankruptcy Code section 101(10)(A) which provides that "an entity that has a claim against the debtor that arose at the time of or before the order for relief" is a creditor. Creditor's rights under the Mortgage Loan that it owned is a claim as defined by Bankruptcy Code section 101(5)(A) which provides "a claim is the right to payment, whether or not such right is reduced to judgment. Liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured."

Claim No. 4 was not based on the Lost Note Affidavit. The affidavit only served to disclose that the original note had been lost, and that DLJ, which executed the affidavit, had owned the Mortgage loan but was unable to locate the note. Secured Creditor still holds the rights under the Note as it was endorsed in blank and DLJ had conveyed its rights and interest under the note and the mortgage to Creditor as evidenced by the January 31, 2020 assignment of mortgage. Thus the

9

filing of Claim No. 4 with a copy of the note and the mortgage complied with Federal Rule of Bankruptcy Procedure 3001(c)(1).

Further, the Bankruptcy Court in finding that the existence of the Foreclosure Judgment was not determinative of the standing issue, failed to consider the preclusive effect of the entry of the Foreclosure Judgment on any issue concerning the note and mortgage. Any and all issues, objections or defenses concerning the note and mortgage were required to have been litigated in the foreclosure action, whether they actually were or not. Such issues cannot thereafter be raised, litigated or determined in another judicial forum. The *Rooker-Feldman* doctrine applies. The Rooker-Feldman doctrine, which is based on the Supreme Court cases *Rooker v.Fidelity Tr. Co*, 263 US 413 (1923), and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983) precludes a federal court from revisiting issues that were, or could have been determined in a state court proceeding. See, also, *Lance v. Dennis*, 546 U.S. 459, 463 (2006).

Since DLJ had standing to commence the Foreclosure Action and upon proper motion and request to the state court with evidence and argument supporting, obtained the Foreclosure Judgment. Therefore, in that proceeding DLJ proved it had standing based on the Mortgage Loan and all documents and instruments evidencing the loan and mortgage lien that were presented therein. Since DLJ had standing as of the Foreclosure Judgment – ownership of the Mortgage Loan, it had the ability and right to convey such interest – it had ownership of the rights under the note and mortgage at the time of conveyance. Thus, Creditor has those same rights and the rights and remedies under the Foreclosure Judgment.

Accordingly, Creditor is a party in interest as it is the successor holder of the Mortgage Loan as well as the successor to the plaintiff/judgment creditor that arose by entry of the Foreclosure Judgment. There is no evidence that contradicts the existence and validity of the January 31, 2020 assignment of mortgage from DLJ to Creditor. That conveyance evidences not just the mortgage lien transfer to Creditor, but the entirety of the rights and interests arising under

the Mortgage Loan, and the Foreclosure Judgment. Creditor does have the right under New York law to enforce the Foreclosure Judgment, which emanated out of the Mortgage Loan. See, *In re Richmond*, 34 B.R. 479 (EDNY 2015).

Therefore, the Bankruptcy Court erred in finding that Creditor did not have standing as a secured creditor in the Case.

II. **THE LOST NOTE AFFIDAVIT WAS NOT SO DEFIEICENT AS TO WARRANT PRECUSION IN CONSIDERIGN CREDITOR'S RIGHTS**

The controlling law on the subject of the Lost Note Affidavit is the New York UCC 3-8804. It provides that a party claiming ownership of a note must establish the ownership and account for the original note's absence. The Lost Note Affidavit, when taken with the fact that the Note was endorsed in blank, and the assignment of the mortgage from Argent to DLJ that was executed on August 17, 2006, is sufficient to establish that DLJ had the legal right to the Note. The Lot Note Affidavit does establish that DLJ had received the note as part of the transfer of the mortgage Loan from Argent to DLJ. The affidavit clearly identifies the loan originator as Argent. The mortgage assignment chain as set fore above and evidenced in the record clearly shows that the Mortgage Loan went directly from Argent to DLJ, without any intervening parties in the chain.

As there was no earlier lost note affidavit by Argent in the Mortgage Loan file or otherwise evidenced, it is clear that when the transfer from Argent to DLJ occurred the original note was part of the transfer of the Mortgage Loan. Thus, the loss of the note had to have occurred while DLJ had ownership of the Mortgage Loan. Further, the loss is clearly shown by the affidavit as it states that there was no sale, transfer, pay-off, release or other disposition of the note while the Mortgage Loan was owned by DLJ. Thus, the only fact to be deduced is that the loss occurred during DLJ's ownership. Further, the affidavit clearly states that it was determined that there was no other possible disposition of the note based on its review of the Mortgage Loan file, and accordingly, it could only have been misplaced or lost. Therefore, Creditor contends that the case of *Wells Fargo*

*Bank, N.A. v. Validmisky*, 195 AD3d 695 (2nd Dept. 2021), which was cited by the Bankruptcy court in discounting the Lost Note Affidavit, does support its allowance as evidence of the status of the note. Further, the existence of the assignment of mortgage from Argent to DLJ, coupled with DLJ's sworn statement in the affidavit that DLJ had purchased the note provides sufficient evidence to negate the Bankruptcy Court's reliance on *Wells Fargo Bank, N.A. v. Meisels*, 177 AD3d 812 (2nd Dept. 2019) in determining there is no evidence DLJ ever had the note.

Therefore, the Bankruptcy Court erred in finding that the Lost Note Affidavit was insufficient to show that DLJ had the note, and thus had the right to transfer the interests in the Note (Mortgage Loan) to Creditor.

### III.  **THE BANKRUPTCY COURT ERRED IN EXPUNGING CLAIM NO. 4**

For the reasons and arguments presented in Points I and II above that Creditor had standing in order to file Claim No. 4, and that the lost note affidavit was sufficient to establish that DLJ had possession of the note and that it was lost while in its possession, the Bankruptcy Court should not have expunged Claim No. 4.

### **CONCLUSION**

The expungement of Claim No. 4 was not warranted based on the totality of the facts and circumstances. The Bankruptcy Court improperly excluded Creditor from participating in the Debtor's chapter 13 case as a holder of a secured claim that should have been given appropriate treatment in accordance with the Bankruptcy Code. It is respectfully requested that this Court vacate the Order of the Bankruptcy Court that expunged Claim No. 4.

Dated:  Westbury, New York
 August 19, 2022

                                                  Respectfully,

                                                  Robertson, Anschutz, Schneid,
                                                  Crane & Partners, PLLC
                                                  Attorney for Appellant
                                                  900 Merchants Concourse, Suite 310
                                                  Westbury, NY 11590

                              Telephone: 516-280-7675
                              Facsimile: 516-280-7674

                              By: /s/_*Kevin R. Toole*___
                              Kevin R. Toole, Esq.
                              Email: ktoole@raslg.com

## CERTIFICATE OF COMPLIANCE

Pursuant to Rules 8014 and 8015 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), this Brief complies with Bankruptcy Rule 8015, except for Bankruptcy Rule 8015(a)(1), (a)(3), and the paper requirement of (a)(4).

This Brief complies with the type-volume limitation of Bankruptcy Rule 8015(a)(7)(B) because, excluding the parts of the exempted by Bankruptcy Rule 8015(g), it contains 3,590 words.

Dated: Westbury, New York
August 19, 2022

                  *Kevin R. Toole*
                  Kevin R. Toole, Esq.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on August 19, 2022, I caused to be electronically filed the foregoing Appellant's Brief with the Clerk of the United States District Court for the Eastern District of New York by using the Court's CM/ECF system, and a true and correct copy has been served via CM/ECF to those below who are registered CM/ECF user and by United States Postal Service First Class Mail upon the following parties:

Allan R. Bloomfield, Esq.
118-21 Queens Boulevard – Ste. 617
Forest Hills, NY 11375-7206

Loyce Tamisi
1350 Pinson St
Far Rockaway, NY 11691

Michael J. Macco
Chapter 13 Trustee
2950 Express Drive South
Suite 109
Islandia, NY 11749

Office of the United States Trustee
Eastern District of NY (Brooklyn Office)
U.S. Federal Office Building
201 Varick Street, Suite 1006
New York, NY 10014

Dated: Westbury, New York
       August 19, 2022

                                                Robertson, Anschutz, Schneid,
Crane & Partners, PLLC
Attorney for Appellant
900 Merchants Concourse, Suite 310
Westbury, NY 11590
Telephone: 516-280-7675
Facsimile: 516-280-7674

By: /s/ *Kevin R. Toole*
Kevin R. Toole, Esq.
Email: ktoole@raslg.com